AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)     ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

**LODGED**
CLERK, U.S. DISTRICT COURT
3/5/2026
CENTRAL DISTRICT OF CALIFORNIA
BY: ____KM____ DEPTUTY

for the

Central District of California



**FILED**
CLERK, U.S. DISTRICT COURT
3/5/2026
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ts_____ DEPUTY

United States of America

v.

MIGUEL HIDALGO,

Defendant(s)

Case No.    2:26-mj-01262-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of January 15, 2026 in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. § 922 (o) | Possession of a Machine Gun |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____/s/_____
*Complainant's signature*

Stephanie R. Crebbs, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:    March 5, 2026

_____
*Judge's signature*

City and state:   Los Angeles, California

Hon. Stephanie S. Christensen, U.S. Magistrate Judge
*Printed name and title*

AUSA: Stephen Chang (x7280)

## AFFIDAVIT

I, Stephanie Crebbs, being duly sworn, declare and state as follows:

### I.  PURPOSE OF AFFIDAVIT

1.    This affidavit is made in support of criminal complaint and arrest warrant against Miguel Hidalgo("HIDALGO") for a violation of 18 U.S.C. § 922(o): Illegal Possession of a Machinegun.

2.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

### II. BACKGROUND OF ATF SPECIAL AGENT STEPHANIE CREBBS

3.    I am a sworn Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed since February 2009.  I am currently assigned to the ATF Long Beach Field Office.  As a Special Agent, I have received hundreds of hours of formal and informal training in the enforcement of federal firearms laws and regulations, including training through the

1

ATF National Academy and Federal Law Enforcement Criminal Investigator Training Program.

4.     Through working for ATF, I have conducted investigations into the unlawful sale, possession, manufacturing, transportation, and importation of firearms.  In conducting these investigations, I have used a variety of investigative techniques, including surveillance and the execution of search and arrest warrants.  Additionally, I have worked in an undercover capacity for ATF on investigations related to individuals selling firearms and narcotics.

### III.  <u>SUMMARY OF PROBABLE CAUSE</u>

5.     On January 15, 2026, Los Angeles County Sheriff's Department ("LASD") deputies received a report that HIDALGO was involved in a domestic violence incident and was armed with a firearm. Deputies conducted a traffic stop on HIDALGO's car, searched it, and recovered a loaded firearm, later to be determined a machinegun. After being Mirandized, and in an video interview recorded on body worn camera, HIDALGO admitted to possessing the firearm.

### IV. <u>STATEMENT OF PROBABLE CAUSE</u>

6.     Based on my review of law enforcement reports and documents, body worn camera video, criminal history reports, photographs, as well as my own observations and knowledge of the investigation, I am aware of the following:

**A.     HIDALGO Possesses a Firearm in His Car and is Arrested**

7.     On January 15, 2026, LASD deputies Enrique Guerrero and Christian Arellano were dispatched to a residence located at

2

1315 Nadeau Street, Los Angeles, CA 90001 (the "Nadeau Street Residence"), regarding a domestic violence in progress call. In a recorded call, the caller stated she had been the victim of domestic violence the previous day and her husband, HIDALGO, had returned to the residence armed with a firearm. During their response, the deputies were informed by dispatch that HIDALGO had left the residence in a light grey 2018 Toyota Tacoma.

8.   When the deputies arrived at 1315 Nadeau Street, they saw a grey Toyota Tacoma bearing CA license plate 19656L3, driving westbound on Nadeau Street from Hooper Ave., at or around 1340 Nadeau Street, approximately 500 feet from the 1315 Nadeau Street residence.  The deputies conducted a registration check of the Tacoma's license plate and learned it was registered to HIDALGO. The deputies conducted a traffic stop on the Tacoma pending a domestic violence investigation. As the deputies approached the vehicle, they saw the sole occupant was HIDALGO, who was seated in the vehicle's driver seat.

9.   Upon reaching HIDALGO, the deputies saw he had an approximate two-inch laceration on his left cheek. According to the deputies, based on their training and experience in the field of domestic violence investigations, it is common for persons involved in domestic violence, whether the perpetrator or not, to commonly sustain injuries. Based on the above, the deputies believed HIDALGO was involved in a domestic violence incident and detained HIDALGO pending a domestic violence investigation.

3

10. As HIDALGO left the vehicle, Deputy Guerrero saw the tan handle of a firearm on the floorboard by the driver's feet, i.e., where HIDALGO was previously seated. The slide of the firearm was concealed by a floor mat.

**B.    HIDALGO's Wife Confirms HIDALGO's History of Domestic Violence and Possession of a Firearm**

11. The deputies then contacted the victim of the domestic violence incident, HIDALGO's wife (M.R.). M.R. told the deputies she had been married to HIDALGO for 29 years and they have three children. According to M.R., they had a history of domestic violence in the past. M.R. stated that she had a dispute with HIDALGO about alleged infidelity the night before. During the argument, HIDALGO grabbed M.R.'s hair and struck the back of her head five to six times. HIDALGO also took M.R.'s cell phone when she attempted to call 911 and she left the residence for the night to avoid further confrontation.

12. M.R. told deputies that she returned home the next day after picking up her son from school. Upon arrival, she noticed the locks on the front door had been changed. HIDALGO suddenly arrived back at the residence in his car. M.R. saw HIDALGO get out of his car and walk towards her and their son. M.R. heard her son yell that HIDALGO had a gun in his hand. M.R. turned to face HIDALGO and noticed he was holding a handgun with a black slide in his right hand. M.R. told the deputies she had not seen HIDALGO with a firearm prior to January 15, 2026.

13. M.R. and her son entered their vehicle to attempt to get away from HIDALGO. Inside, her son dialed 911 for help. M.R.

4

then saw HIDALGO walk back to his car and drove away in an unknown direction.

14. The deputies also contacted the minor son, M.H., who confirmed that he had seen HIDALGO holding a firearm in his hand during the encounter. M.H. informed the deputies that he had yelled to his mother, "He has a gun!" and called 911 for help.

15. The deputies also contacted two neighbors who both advised that they saw HIDALGO holding a firearm during the encounter.

### C. HIDALGO Admits to Possessing the Firearm

16. After arresting HIDALGO at 1340 Nadeau Street, the deputies advised HIDALGO of his Miranda rights in a recorded body camera video. HIDALGO stated he understood his rights and agreed to speak to the deputies. HIDALGO denied hitting or hurting M.R., and denied taking M.R.'s phone to prevent her from calling 911.

17. The deputies asked HIDALGO if he had a firearm in his car. HILDAGO told the deputies that he did. The deputies asked HIDALGO why he had a firearm.  HIDALGO stated he needed it for protection from his wife's boyfriend.

### D. Deputies Recover a Loaded Firearm Without a Serial Number Inside HIDALGO's Car

18. Based on the fact that the deputies had observed a firearm on the floorboard of HIDALGO's car, and also after receiving consent from HIDALGO, the deputies proceeded to conduct a search for weapons in HIDALGO's vehicle. During this search, Deputy Arellano saw a magazine well protruding from a

5

floormat on the car's driver's side floorboard.  After lifting the mat, Deputy Arellano recovered a loaded tan 9mm handgun with a black slide from the driver's side floorboard. The firearm did not bear a serial number and was loaded with one round in the chamber. The firearm also had a magazine containing nine rounds of 9mm ammunition.

19. Deputy Arellano inspected the firearm and believed it to be in working condition and capable of firing. Deputy Arellano noticed the firearm had a silver machinegun conversion device affixed to the rear of the slide. This device allows the firearm to switch from semi-automatic to fully automatic, making the firearm HIDALGO possessed a machinegun.

20. Deputy Arellano continued to search HIDALGO's car. Under the driver's seat, Deputy Arellano found a small plastic bag containing 13 rounds of 9mm ammunition.

21. Deputies Arellano and Guerrero showed the recovered firearm to M.G. and his son M.H.  Both the M.G. and M.H. positively identified the firearm as the same firearm they saw HIDALGO holding that day.

22. HIDALGO was arrested by LASD for Domestic Violence Causing Corporal Injury, in violation of California Penal Code Section 273.5(a), Possession of a Loaded Firearm While Not the Registered Owner, in violation of California Penal Code Section 25850(c)(6), and Possession of an Assault Weapon, in violation of California Penal Code Section 30605(a).

6

**E.   ATF Confirms the Device Attached to HIDALGO's Firearm Qualifies as a Machinegun**

23.  On January 21, 2026, I reviewed images and the  seized firearm and noted the machinegun conversion device affixed to the back of the firearm HIDALGO possessed.  Based on my training and experience, and prior handling of machinegun conversion devices, the device appears to be consistent with other machinegun conversion devices that are intended for use in converting a semiautomatic pistol to fire fully automatic.

24.  On January 28, 2026, I sent the seized firearm to the Firearms and Ammunition Technology Division, Field Response Branch for field testing.

25.  On February 10, 2026, I reviewed a Report of Technical Examination dated February 10, 2026, by Firearms Enforcement Officer Cody J. Toy, which concluded that the seized firearm is a machinegun as defined in 18 U.S.C. § 921(a)(24) and 26 U.S.C. § 5845(a)(6).

## V.    CONCLUSION

26.    For all of the reasons described above, there is probable cause to believe that HIDALGO committed a violation of 18 U.S.C. § 922(o): Possession of a Machinegun.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this  5th  day of
March, 2026.

_____
HONORABLE STEPHANIE S. CHRISTENSEN
UNITED STATES MAGISTRATE JUDGE